Good morning, Your Honours. Michael Bernanke for Appellant Sun Life Assurance Company. I plan on preserving about four minutes of my time for rebuttal. In Hart v. Reliance Standards, the Supreme Court stated that attorney's fees under ERISA were appropriate if the applicant can meet the standards set out in 502G and, in addition to that, can show that they achieved some success on the merits. We're here today because the district court in the underlying action awarded attorney's fees against Sun Life under ERISA, even though the applicant didn't meet the requirements of 502G, and by that I mean it didn't either sue under ERISA or was sued under ERISA, and it didn't achieve any success on the merits in its own right. In fact, it didn't even contribute... Well, it was sued under ERISA. Well, it was sued by the plaintiff. Right. It wasn't sued by Sun Life, and it didn't initiate a lawsuit. Right, but it was sued under ERISA. It was sued by the plaintiff, but it's seeking fees against Sun Life. Right, but the suit by the plaintiff is an action under this title. It's an action under this title. Right, so doesn't that necessarily qualify it under subsection G for attorney's fees? No, because I think if you look at the quarter case, which Judge Fragerson authored back in the 1990s, you have to look at the actual statute, the 502G statute. The statute specifically says, and I want to quote it correctly, 502G1 states, In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and cost of action to either party. I think the word either necessarily means that there's got to be an ERISA cause of action, and the applicant has to have privity with the entity that it's seeking fees from. What authority do you have for that? Well, I think if you look at the quarter case. Well, don't you agree that in quarter there were two things? Number one, the plaintiff was not a proper party. And number two, that Sun Life here is a fiduciary. Aren't those two differences that make quarter inapplicable? No, I think quarter is actually factually, I will say the mirror opposite, but legally directly on point with this case. If you look at what happened in quarter, you had an investment advisor who advised a pension plan to invest in Alaskan real estate, the real estate tank. The plan and the beneficiaries sued the investment advisor. The district court dismissed the plan's claims against the investment advisor on the grounds that it was neither a participant, beneficiary, or fiduciary. It allowed the claims against the beneficiary to go forward, but ultimately dismissed those claims as well because the investment advisor wasn't a fiduciary. The investment advisor then moved for attorney's fees. Well, so basically the problem was nobody had a cause of action under ERISA. There wasn't one. Well, no, I think that there was a cause of action by the beneficiaries, I think, a valid cause of action. The problem was that the defendant wasn't a fiduciary basically. Right. It was not an ERISA cause of action. There was no cognizable case. But what I want to focus on in that case. But that isn't true here. There was a cognizable case and it was decided. But what I want to focus on in that particular case, though, is that the reason that the plan was not allowed to recover attorney's fees from the investment advisor. The court specifically said the very reason that you didn't have a cognizable case is the very reason that you can't collect fees under the statute. And if you look at 502G1, it says, in any action under this subchapter by a participant, beneficiary, or fiduciary, the court found that the plan was not a participant, beneficiary, or fiduciary. The same rule applies here. The plan is not a beneficiary. Excuse me, because you're not responding to my questions. The net result there, what they meant was there was, the reason why you can't get fees is because there wasn't a case under ERISA. There was no cognizable case under ERISA by anybody against anybody. Is that not true? I think ultimately the district court dismissed it. You're right. But I think that they were focusing on the statutory language. And I understand your concern, and that was one of the issues that we raised. I think our primary issue in this case, and I wanted to start off with the language of the statute to answer your question, but the primary issue is you don't have a, they didn't achieve any success on the merits in this particular case. And by that I mean there's been no case that has basically held that a fee applicant can point to somebody else's success on the merits. Well, but you're dropping down to subsequent issues. Yeah. Which means we have to assume then, when we drop down there, that this is an ERISA action, correct? You're assuming that, and now you're saying they had no success on the merits, correct? Yeah. What I want to come back to is it is an ERISA action, obviously. The plaintiff basically submitted a fake claim under 502A1B. We went ahead and we paid attorney's fees to the plaintiff. But assuming that, you're saying that there was no success on the merits. Yes. I'm also assuming that. All right. Didn't they, in this thing that was called an action under this title, they aligned themselves because, and they were an absolute necessary party at the time, an indispensable party, and they prevailed on the views that they presented in the same way that Dr. Micah did. Well, I think there's two points. One, the position taken was really Dr. Micah's position. They just simply joined on it. But number two, I think you also have to do something to achieve that success on the merits. If you look at the Rockhouse case, which the Supreme Court relied on in deciding the Hart v. Reliance standard, the issue was whether or not the CR Club could get attorney's fees for absolutely failing in their decision. The Supreme Court ultimately determined that they couldn't get fees. But what the argument was, they should at least get fees because they contributed to the overall decision. The district court stated that without the CR Club's input, it couldn't have reached such an informative decision. One thing which you don't have to answer, but it's kind of bizarre, is in the end what they got was $37,000 or so worth of fees. They were pretty much cut in half by the district court. So they didn't get much. And so exactly why we're here is a mystery to me. But at any event, they thought necessary parties in the case, everybody thought, and they had to do something. They had to file pieces of paper. The bulk of the time actually was showing up in an early neutral evaluation, which was a substantial amount of time. They maybe got fees altogether for about, what, 15 hours or something? No, I think they got fees. And they got fees. You talked about what they asked for, but what they actually got. They actually got fees. I think it was $39,000, like you said. I think the issue was there's kind of a broad implication to this whole thing. I mean, these federal fee-shifting statutes borrow from one another. The court, when they were analyzing whether fees are appropriate under ERISA in the Hart case, borrowed from the Clean Air Act. Interveners can get fees, right? Well, they can get fees, and I don't disagree with that in some circumstances. But what you have to do is that you achieve some success on the merits. The district court made two things. One, the success could be derivative. And, two, the district court didn't point to anything, anything whatsoever, that the plan did to contribute to the success on the merits. And there's nothing in the record that the plan did. It was not a catalyst for the settlement in any way. How do we know that? Because I think if you look at the ‑‑ Didn't the ‑‑ first of all, I mean, the other fact here is that the plan is essentially the contracting part. Doesn't the plan have its own interests in having the members get what they, the plan, have contracted for them to get? The plan's opinion, you know, is basically irrelevant. They basically give discretion to reliance standard. The way ERISA is supposed to work for benefit claims is they're supposed to be an expedited process. They give the discretion to reliance standard. Right. But if I'm an ERISA plan and I go and say, well, I'm going to provide benefits through an insurance company, suppose you, Mr. Insurance Company, then said, you know, we're going to turn down every fifth person just because. Now, doesn't the plan have an interest in seeing that you don't do that? It has contracted with you to provide certain benefits. I think the plan basically, first of all, there might be a civil lawsuit with respect to that. This is a civil lawsuit. What are you talking about? It's a civil lawsuit under state law. But I think the plan basically simply, ERISA takes care of this. They make, they allow the participant to file a lawsuit, which is exactly what happened in this case. You have to remember, we offered a defense in this case. I understand what I was asking you. Suppose the plan wanted to file a lawsuit and said, you know, we're also fiduciaries here, and this insurance company, we have a deal with them that they're going to provide benefits, but they're turning down every fifth person just arbitrarily. They don't have a lawsuit for that? The plan is not a fiduciary in this particular case. In certain circumstances, they might have an action. I'm not going to say, but not in this particular circumstance. If they don't have any discretion, they're not a fiduciary. I'd like to point out in the spending run. But they're the ones who are paying for this. That doesn't mean they're a fiduciary. It doesn't mean that they have any interest in whether or not what they're paying for is being gotten? Technically, the employer is paying for it. The plan is simply a legal entity, basically. But they are not a fiduciary under a Ninth Circuit case. Well, that's clear. And, for instance, that was why when we were talking about the quarter, basically, the Ninth Circuit specifically found that the plan wasn't a fiduciary. I'd like to talk about Skangarello really quick. Before you leave, you said that your primary point you wanted to establish this morning was that the group did not achieve some degree of success. Exactly. Is that a question of law or a question of fact? I think it's both. I think it's a question of law whether or not success on the merits can be derivative. And I think we've got to proceed cautiously because, once again, these thesis statutes in federal courts, they borrow from one another. And if you start saying you can point to a co-defendant's success as your success, that can be potentially a scary proposition. And then I think it's a question of fact as to whether they actually contributed anything. The simple fact is it was plaintiff that did all the motion work. It was plaintiff that made all the arguments. I think I outlined exactly what their pleadings were that they did. They couldn't even be a catalyst for the. And part of your argument, as I understand it, in terms of your theory that you align the parties, and from that alignment you determine whether or not they qualify for attorney's fees under the statute. And you say, and correct me if I'm wrong, didn't you suggest in your brief that one of the purposes of ERISA is to remove the plan as an advocate for the beneficiary? I don't think I said it was to remove the plan. I think what I said is the plan. All you're talking about is different attorneys. The plan is essentially a non-entity when it comes to whether or not the decision was right or wrong. It's the entity that had discretion to make the decision. The court reviews the entity that had the discretion, their decision basically, and that's how. But we can't go on that because at the time of this case, the plan was an indispensable party, a defendant. It was an indispensable party, and I do understand that. But I would like to point out in the Scandarella case that they cited from the Second Circuit, if you look at what happened in that particular case, you had an insurance company suing the plan and the beneficiaries, saying that they were fraudulently putting people on the health insurance plan. The beneficiary in the plan countersued against the insurance company. It was in federal court under ERISA. The beneficiaries and the insurance company settled on terms that appeared to be favorable to the beneficiaries. The Second Circuit didn't use that settlement to justify whether or not the plan had success on the merits. The Second Circuit looked at the claims brought by the plan against the insurance company and the claims brought by the insurance company against the plan to determine whether or not they had success on the merits. And I think that's the important thing to take away from that case and all the other cases. No court that I'm aware of in the Ninth Circuit or any other circuit has specifically stated that success on the merits can be derivative. And no court has ever stated that you don't have to do anything. You can just rely on what other people did to achieve that success on the merits. But how then, who was supposed to determine, other than the district court, who was responsible for the success? If you have two parties who are working together toward the same end, which they were here even though the plan was the defendant, and you're assuming that it was the beneficiary that brought about the result, but the district court was sitting there and he didn't seem to think so by itself. Well, if you look at the district court's opinion, and I want to reserve a little bit of my time, if you look at the district court's opinion, he specifically didn't get to that. He said success on behalf of the plaintiff naturally equates to success on behalf of the plaintiff. Well, on behalf of the plaintiff, meaning that the plaintiff will get the beneficiary, but he wasn't saying who. I think that... That it wouldn't have made a bit of difference if the plan hadn't been there. In fact, the plan had to be there, so he couldn't have said that. I agree with that, but I think you're conflating... I mean, I think that the plan simply having to be a responsible party is not an issue here because most defendants that succeed ultimately in litigation were improperly named as a defendant. The American rule, which the Supreme Court has always said you have to... is the fallback position, is simply that the losers pay the... I mean, that you pay fees even if you're meritorious. So, I've got about 30 seconds, so if it's okay with you, I'll reserve that for a vote. Okay. Good morning, Your Honours. May it please the Court, my name is Elizabeth Van Cleef and I represent Group Disability Benefits Plan for Gynecologic Oncology Associates Partners. That's a mouthful. I would like to start... You said Sear held that the plan can't be a fiduciary under these circumstances. I do agree that the plan under this case is not a fiduciary because they've delegated a decision-making power to Sun Life. And that was actually admitted in the answer to the complaint. And if the suit was filed today, they would not be a party. That is correct. So, if the plan, for example, had brought a terrible insurance plan and they were sued saying you're a fiduciary, you brought a terrible plan and they're not giving benefits to anybody, you couldn't sue them as a fiduciary? The plan would not be suing Sun Life in that... I understand that, but I'm just... Well, all right, go ahead. If you want to concede it, I guess you can concede it. Go ahead. The point that I wanted to bring to this Court's attention is that our position is that whether or not there is success on the merits is an issue of fact that the district court decided and is subject to the standard of review of abuse of discretion. And that is actually from the Supreme Court case Hart v. Reliant. You know, I think the lawyer for Sun Life would agree with that, with that part of the decision. But what he says is a question of law, is whether or not you can have this derivative concept of success from another party. And he says that's a question of law. And, Your Honor, I think that the district court's finding that it was not just a derivative, the district court's factual findings which would lead it to believe that it's not a derivative cause of action are what is being... No, he's saying derivative success, I think. Okay, so then I would turn back to how do you define what is derivative success. And that would be, from my view, a factual finding that the district court would have to find. So, in other words, is success achieved by the plan or is it just piggybacking on behalf of the participant? Well, that would be a factual finding for the district court to find. And the district court, in its order, said the plan succeeded in demonstrating both that it was not liable and that Dr. Micah was entitled to benefits, which was consistent with the plan's answer to the complaint. Does your position depend upon the fact that the plan was, at that point, thought to be a necessary party and was sued as a necessary party? Would it have made a difference if the plan had simply intervened affirmatively to your position? I think the fact that the plan was sued as a necessary party and was therefore classified by the district court as a nominal party allows the plan to align itself with the interests of the plaintiff. Well, I understand it, but I could have, without all that complication, have directly, I mean, let's say the case came up today and I presume this is what Sun Life is concerned about and they weren't sued, in fact, because they didn't have to be sued. I guess they could be sued, but they weren't sued. But they said, you know, we think that the Sun Life is making a terrible mistake and we have an interest in seeing that our members get whatever benefits they're entitled to, so we're going to intervene. Would you have the same, I'm assuming that they would be allowed to intervene. Would you have the same position? Your Honor, the issue would be, is the plan permitted to intervene on an ERISA cause of action? So in your hypothetical, the plan is not a party to an ERISA cause of action because they weren't sued as a nominal defendant. And if the plan is not a fiduciary and is not able to sue Sun Life for ERISA under ERISA, then they wouldn't be able to avail themselves of five or two fees. But then it seems to me you're sort of in big trouble because the net result of your concession is they're still not a fiduciary. So they were just there by mistake. So they're still not a party under ERISA, a proper party under ERISA. Well, they were a proper party at the time that they were sued. Yeah, but they're not a proper party, so why are we giving them fees? In other words, it's different from saying they're not a necessary party, but by saying they're not a fiduciary, you're saying they weren't even a proper party. I understand, Your Honor. So in order to be sued by the plaintiff, Dr. Mica, the plan doesn't have to be a fiduciary. Dr. Mica can sue the plan for benefits and sue Sun Life for benefits because the plan is the entity that purchased the policy from Sun Life. So they are a proper party for the participant, Dr. Mica, to sue. I thought that your hypothetical was if Dr. Mica had not sued the plan and the plan was intervening without an ERISA cause of action, then the plan, yes, wouldn't have an ERISA cause of action and wouldn't be able to recover fees. But in this case... And they wouldn't be allowed because they're not a proper plaintiff under any of the subsections of ERISA. Right. It would be because they wouldn't have a... So they can intervene as a defendant and do the same thing they did. I mean, I don't understand the difference. The difference is that the plan in this case was a proper party that's being sued under ERISA, prevailed, not prevailed, but had some success on the merits and is entitled to attorney's fees. In the hypothetical that you brought up, the plan wouldn't be a party to the ERISA cause of action, but because they are, 502G applies, and if they achieve some success on the merits, they would receive attorney's fees. Ms. Van Cleef, tell me why this is not a problem for you. The plan was only a party because of the status of Ninth Circuit law at the time, which has subsequently changed. Correct. The plan was told by Sun Life, you're free, we'll fully indemnify you, we'll take over everything. And the plan said no. And the plan, as we were told, I think it's correct, it's not really an entity, it's a substance, but it's not an entity that can sue or be sued at least under... that can sue under ERISA. And so the plan was really acting like the employer. It was acting with the same interest as the employer. We want to defend our employees so they can get the most out of these policies, we paid for them, etc. So didn't they create their own problem? Instead of acting like a plan and just accepting the indemnification, they're acting like an employer. And because they were not acting in the role of the plan, they shouldn't get their fees here. Why is that not a problem for you? The plan is a separate legal entity, but in this case it is sponsored by the employer. And so it acts through... the plan acts through the employer. So in that situation, the partners of the employer had supported Dr. Micah's claim for benefits. One of the partners wrote a letter saying that he was disabled and couldn't perform his job. And so if the plan was to say and file an answer in court saying, yes, Dr. Micah should... Why couldn't they just file an answer saying, we don't know and we don't care? You see that in answers all the time. We neither admit nor deny the allegations. Don't you see that all the time in answers? Well, their actions prior to filing the answer were consistent with we admit the allegations Dr. Micah should be put on benefits. So the plan... But they were not prohibited, as Judge Berzon suggested, from saying in their answer, we neither admit nor deny the allegations. Well, and I understand your point, and I think that part of the issue is we didn't actually get to the point of what should be written in the answer, do we admit or deny. The indemnity coverage offered by Sun Life requested a waiver of any conflict of interest and required that the plan have the same law firm, Mr. Bernanke's law firm, in order to defend it. So it wasn't a situation where Sun Life offered it separate attorneys. Well, that's fine. So let's suppose that they had the right to say, no, we're going to appear on our own, but it could have appeared on its own a whole lot cheaper by just filing a piece of paper saying, we're nominal defendants, we're here for relief, we neither admit nor deny anything, and we don't intend to say anything else. Well, and I understand that, and I would say that that goes towards the amount of the attorney's fees, and the amount of attorney's fees is within the discretion of the district court, and the district court did lower the attorney's fees. Well, it goes to the success question, the legal question of success, given the fact that it had any... You see, that's why, to me, the case does depend on whether you could have affirmatively intervened, because, essentially, that's what you did. You behaved like... Does the fact that you were nominally sued, when you could have done nothing as a nominal defendant, allow you to claim success for the money spent trying to do something else other than act like a nominal defendant, i.e., really to act like an intervener or an advocate on behalf of the plaintiff? Right, and I understand your point. I think that the point here is that the plan acting through the employer was because they decided not to waive the conflict of interest, because the conflict of interest did present itself, that they had to file an answer, and that they filed the answer based upon the knowledge that the plan acting through the employer had, and they had to review all of the filings in court. But can they logically claim success for something that they could have gotten, essentially, for free or close to free, i.e., getting the benefits for their plaintiff, rather than simply getting themselves out of the situation? Well, why don't you answer that question? My response to that is that the district court found that it was a success because the plan was sued, and when Sun Life put the participant back on claim and paid his benefits, the plan was successful in achieving that it was not liable. So the plan was successful in showing that Sun Life was the responsible party to pay the benefits, and the plan was not the responsible party to pay them. But it didn't need to do that, because the plan had conceded that in their, even though you didn't accept their indemnification, they had conceded that in the indemnification communications, right? Well, but nevertheless, the plan's position at the district court level was vindicated, and they were successful on their position. So what is your position on whether the plan could have, if it weren't sued, just came in and intervened? So the plan could intervene. It would be a proper state law cause of action. Not an ERISA action. Not a preempted ERISA action? Well, it would depend. It would almost surely be preempted. Well, if it's for a breach of contract. In other words, if the plan is paying premiums and Sun Life isn't performing under the contract, there's a possibility it would not be preempted. But if it did that, then it wouldn't get ERISA attorney's fees. So you don't think it could intervene in the ERISA case as such? Right. I believe that it could. Because it wasn't a petitiary, beneficiary, or participant? Right. Right. That is correct. And so that's why this case is actually unique, because it's an area that... Although sometimes people can intervene and wouldn't otherwise have a stand. Right. Right. Well, and I think this case is unique because it's an area of time under which the plan had to be sued but no longer has to be sued. They were a victim in the litigation, aligned themselves with the participant's interest, and the district court found that they had success on the merits. That determination of success on the merits is entitled to abuse of discretion. Is there any point... This seems to be a one-off case. Have you guys tried to mediate it? We have terrific mediators. There's not very much money at stake here. It's a difficult legal issue, and I don't know that it was worth trying to sort it out. And I do believe that Mr. Bernanke hinted at the concept that he thinks that this case is a case that he wants to litigate because he's afraid that it will apply to other federal statutes or other ERISA statutes where a party is a nominal defendant or where there's two co-defendants. So I can't answer that. But have you tried mediating through our mediators? Yes, yes, absolutely. Well, I'm not an official mediator. We've tried to settle. You haven't? We haven't done anything. All right. All right, thank you. Thank you, Your Honors. I'd like to thank you for seeing that it's complicated. I felt bad that I was preparing so much time on this issue. It seems like it should be simple, but it really is a complicated issue. What about the mediation suggestion? You know, I don't think we'd be opposed to that. I think that we have had settlement discussions. We've never formally mediated the case, actually. But we are concerned about the implications of the district court's ruling, so that's one of the reasons we did appeal it. But you're right, the fees themselves aren't that great. And it does seem fairly one-off because you have a situation where somebody was a necessary party at the time and isn't anymore. No, and I understand that. And I do understand that. Like I said, it's a complicated issue, and it's technically a, you know, either way it could be dangerous precedent. So I would certainly talk to my client about the possibility of that. But I'd be happy to answer any other questions. I would like to make one point about, once again, you know, they talk about the insurance company having a conflict of interest. What happens in these claims is that the plan is simply a legal entity. It's just simply there. There is, you know, the district courts never base a decision on the fact that the plan believes actually the plan believes law. You're not contesting that there was a conflict of interest, are you? Really? Well, I guess the issue there goes is they had the right to hire their own attorneys and pay for that with their own attorneys if they felt strongly that they wanted to support it. But we shouldn't have to pay for it. What I was going to say is they felt that they, as I understand it, is it the reasonable inferences, they felt that they had to hire their own lawyers because the lawyers that Sun offered would only deny each of the allegations of the complaint, which the plan said should be admitted. Well, and I understand that. Or even, as I understand it, wouldn't have filed the complaint of the sort that Judge Murphy and I were positing, saying we neither admit nor deny. They could have done that, and that's what most do. Most of what happens is, once again, the plan's opinion – Well, perhaps they could have done that, but your lawyers weren't going to do that. Your lawyers were going to defend it. Well, our lawyers generally would do that, but at the end of the day, I think what's important to understand in these ERISA actions, the plan's position is completely and utterly irrelevant. It's no different than if we ask somebody – That's true, but you're stuck with Everhart. And so if you were willing to accept the tender of this defense, in order to not have a conflict, the lawyers would have to file separate answers for each of the parties they were representing. One in which they neither admitted nor denied, and the other in which they denied. Correct? There would be separate answers. You're absolutely right, and I think that's true. But once again, I guess to me it's a distinction without a difference, because the decision is going to be based on the administrative record and the decision that the entity that was vested with discretion, i.e. Sun Life, has made. The plaintiff is going to argue that that decision was wrong. The judge is going to review the administrative record. The fact that the plan takes a position in the answer, or the plan takes a position in the litigation, doesn't matter at all in the end result. It doesn't matter one iota. That's the point I'm trying to make. They didn't really need to. They wanted to stay there because this was a small group of doctors who, as you pointed out, wanted to do whatever they could to get Dr. Micah the benefits, and every chance they could they said, me too. I'm not sure that's the kind of case where you want to award attorneys fees. But that being said, I'll answer any other questions. You want us to send this to mediation? That might be a good idea. I don't know how the process works after an oral argument. Basically, we would have the excellent mediation office set up one phone call and explore the possibility of mediation. Then you could either go forward or not go forward. We can't order you to mediate, but we can vacate the submission while you talk to the mediation office about whether to go forward. It's certainly worth exploring, I think. Disability, what's your view on that? I guess the plan would be willing to do mediation. Thank you very much. Thank you. This matter is submitted.
judges: Pregerson, Murphy, Berzon